The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Morning, counsel. We'll call as our first case 4-21-0713, People of the State of Illinois v. Victoria Baker. Would counsel for the appellant please state your name for the record? My name is Elizabeth Boddy from the State Appellate Defender's Office. Thank you. Counsel for the appellee, could you please state your name for the record? My name is David Manchin from the Appellate Prosecutor's Office. Thank you, counsel. Ms. Boddy, you may proceed. Good morning. Victoria Baker was charged by accountability with harassment of a witness for running one of the many errands ran for her sister. She delivered a letter to her sister's boyfriend, Richard Rountree. There's no evidence that Victoria had the and the only reason why the jury convicted her is because it misunderstood the law of accountability. Now, the state makes one main argument on appeal and it's that this is a common design case and that under the common design theory of accountability, the evidence is sufficient to prove Victoria's guilt and no trial errors occurred. This is wrong. This is a shared intent case and always has been a shared intent case. The jury was not instructed on the common design theory of accountability. The prosecution did not argue the common design theory of accountability. It acknowledged it had to prove her intent. It argued her intent was to pressure Richard into lying on the stand because the state never argued the common design theory of accountability. Victoria never presented a defense to it. Her defense was solely that the state did not prove her guilty beyond reasonable doubt because it did not and could not prove that she had the specific intent to harass or annoy Richard. At the hearing on the motion for a new trial, which challenges the evidence, there was one issue. Did the state prove Victoria's specific intent to harass or annoy? And the state argued it did. It argued that the jury found that she had a specific intent to harass or annoy. No one said, and the judge agreed, no one ever said anything about the common design theory because the prosecution knew it didn't apply in this case. The common design theory applies when you have two people agree to commit a crime, let's say robbery, and one of them commits an unplanned crime in furtherance of the planned crime, let's say murder. They're all accountable. Everyone who agreed to that robbery is accountable for the murder. We don't have that here. We don't have an agreement. We don't have an unplanned crime committed in furtherance of the intended crime. It just doesn't make sense and the prosecution recognized that. That's why the prosecution argued the shared intent theory and it's completely inappropriate for the state to now argue for the first time on appeal in an effort to affirm Victoria's conviction. This is a common design theory case. The state's reliance on the common design theory offends basic concepts of notice and due process and fairness, and it's relying on it for one reason, to circumvent its failure to prove mens rea. There simply was no evidence in this case that Victoria Baker shared the specific intent to she knew of the letter's criminal intent. The state conceded she did not know the content of the letter before she got it. Victoria testified she did not read the entire letter before she delivered it to Richard. She said she read a couple lines that implicated Richard Enrica's abuse, and so she brought it to Richard. That testimony went unrebutted. Does the instructions on accountability distinguish between common design and shared intent? IPI 5.03 has additional bracketed language that is used in common design theory cases, and it was not given to the jury in this case. Nor is there a non-IPI explaining common design that often occurs in common design theory cases. So the instructions that were given here don't distinguish between common design and shared intent? No. The instructions are just the general IPI 5.03 without the bracketed language that is used in common design theory cases. What bracketed language would that be? It says that the word conduct includes criminal act done in furtherance of the planned and intended act, and you use that bracketed language when the offense is different than the planned or intended act. That's what the common design theory is. Is a jury not able to find a defendant guilty in common design theory if that language is not included in the instructions? Not when the entire case is shared intent. The I think typically in common design cases, that language is given, and if it's not, then oftentimes there's a non-IPI given. Neither one was given in this case. Also, I want to ask you about the response to the jury's question. You assert that the counsel was ineffective with regard to his agreement to the response in this case, but essentially the judge should not answer the question. Simply say, receive your instructions, read them. Is that correct? Counsel was ineffective for not suggesting a different response. So my question is this. Am I correct that if the actions of counsel can be deemed to be strategic or tactical judgments by counsel, then an ineffective assistance of counsel claim fails? There's no sound strategic reason for counsel. Counsel, this would be a lot quicker and easier if you could answer the question I asked. If there was a sound strategic reason for him, then yes, strategy reasons are deemed and are not ineffective, but there was no sound reason. Let me follow up on this. All of us on this panel before we got these wonderful jobs had been trial judges and had handled lots of criminal cases in that capacity. Some of us had also been active participants as lawyers in criminal cases. And it's one of the cliches of criminal cases of truism that confused juries rarely convict. Would you agree with that? No, I think in this case, the confused jury... No, that wasn't my question, counsel. My answer is no. My answer is no. The statement that most trial judges and criminal lawyers think that typically confused juries don't convict. And I'm saying no, in this case, as a prime example, because this confused jury... That's an incorrect statement of how things work generally. I think... I can't say that in this case, the confused jury convicted. So I don't think it's an incorrect statement to say... We don't know what the jury is going to do. Counsel doesn't know what the jury is going to do. But my question is this. If a jury submits a question to the court, which indicates uncertainty or perhaps confusion about instructions regarding what the jury needs to find to convict, this wasn't a financial sort of issue. Why should we ever conclude that counsel was ineffective? And this wasn't a tactical decision to essentially say, I don't want this clarified for the jury. I want the jury to go back and remain in a state of uncertainty or confusion, because that's a good thing for my client. Why isn't that sound tactics? The confusion was on the critical element in this case of knowledge. And so any sound, reasonable defense attorney would want to make sure that the state was held to its burden of proof of proving every element of the crime beyond a reasonable doubt. And the problem here, when the jury expressed confusion on this question by referring the judge... By referring the jury back to the instructions, which were silent on knowledge, the judge is essentially telling the jury, the answer to your question is in those instructions. So the jury goes back, looks at the instructions, doesn't see knowledge, and thinks to knowledge isn't required. So we can convict her, we can find her accountable, so long as she intentionally and knowingly deliver the letter without actually knowing the criminal intent of the letter. Well, that's one possible interpretation of what the jury was doing. Well, the fact that there's one possible interpretation... So let me make my former question here. If your interpretation is correct, why did the jury submit the note in the first place? Because it was confused. The instructions were confusing. The prosecutor confused the jury. It misstated the law over and over and over again in the shared intent case by telling the jury that her delivery in and of itself proved her accountable. So the jury is left with... The prosecutor's misstatements of law has these instructions that are silent regarding knowledge. And so it's asking the judge for guidance. And the judge had a duty to give the jury appropriate guidance to make sure that it was a crime beyond a reasonable doubt. Despite counsel saying, no, judge, I don't want you to do this. I want you to tell them they have their instructions now. And of course, the question was, does the defendant have to know the intention of the letter was to annoy her arrest? If that's that, someone apparently in the jury raised this question. And if this question is not answered, why wouldn't it be appropriate for counsel to conclude, gee, if we don't answer that question, this same person or persons might say, I'm uncertain and confused that I'm not willing to convict. Why is that unreasonable? Because the uncertainty with the judge's response, it directed them to think that knowledge wasn't required. The response led the jury to think the exact opposite the defense attorney wants. If that were the case, again, why would the jury have to do that? The jury was confused because of the prosecutor's misstatements of law and because of the instructions and it needed guidance. Well, again, you've conceded the jury was confused. I think that's appropriate. Why is it ever ineffective assistance of counsel for the defense attorney to say, I don't want to clear up the jury's confusion? I think in this case, the confusion needed to be clarified. And it was the judge's duty as to resolve the jury's confusion on a substantive legal question. It was a critical point of law in this case. The entire crux went to what Victoria knew. And somehow that got lost in this entire trial, probably because the prosecutor's repeated misstatements of law saying that her knowledge didn't matter, that as long as she delivered the letter, she's guilty. So it's not surprising that the jury was confused. But there was no evidence that she knew of the letters criminal intent. She testified she didn't read the letter in its entirety before she delivered it to Richard. Her actions are completely inconsistent with a criminal intent. It is undisputed that she did not pressure Richard or tell him to testify in a certain manner. Richard and Victoria testified that Richard repeatedly asked her what he should do. And her answer was always the same. I don't know. And we can't forget that because Victoria gave the letter to Richard, he's now in prison for abusing Rika. It was only because of this letter that the police actually investigated Richard. But Victoria's conduct was completely reasonable. She got a letter she thought was intended for herself. She opened it up, saw a couple lines, realized it was intended for Richard, and she brought it to Richard. Her actions were completely reasonable. And had the jury been properly instructed, had it properly understood the law of accountability, had it received the proper guidance from the judge, had the prosecutor not misstated the law repeatedly, the jury would have voted to acquit. You're arguing all of this about what she did based upon her testimony as if it were scripture, which the jury could not fail to accept. Why is that the case? Because it was unrebutted. And the evidence is actually the jury. Having heard the defendant's explanation has to say this is unrebutted. No one has said otherwise. Not guilty. Is that how it works? No, but her testimony was unrebutted and the evidence actually supports her testimony. When she got the letter, she called Richard. She didn't say, hey, Richard, I have this letter and it's asking you to lie on the stand and take the blame. She just said, I have something to give you. I need to see you. If she had read the letter, she would have presumably said that. Also, when she got in the car, she gave Richard the letter to read to make sure he was understanding it correctly. Now, if she had already read the letter, like the state speculates, she would have said, no, I already read the letter. You're reading it correctly. It's asking you to get up on the stand and take the blame for Rika's death. So the evidence actually is consistent with Victoria's unrebutted testimony that she did not read the entire letter. The only thing the state can point to that she read the entire letter is speculation that she must have read the letter because otherwise she would not have known it was completely inaccurate. Those three lines or the two lines that she read implicating Richard in Rika's abuse alerted her to the fact that she was not the intended recipient. So the evidence actually does support Victoria's testimony and had the jury been properly instructed and understood the law of accountability and had this prosecutor not stated the law of accountability repeatedly, this jury would have voted to acquit. Are there any other questions? Seeing none, was there any further argument you wish to make, Ms. Vaughn? That's it. Thank you very much, counsel. Mr. Manchin. May it please the court, counsel. In this case, the state was not required to prove this, only required to prove the specific intent to harass. Contrary to counsel's repeated assertion, this was not limited to specific intent to harass. The prosecutor's argument that the is a separate intent from the intent to harass. And the prosecutor argued that the defendant shared the intent to get Roundtree to lie, which again is a separate offense from intent to harass. So this is, in fact, a common design case where you're planning to commit a armed robbery of the liquor store and you end up killing the clerk instead. You're intending to commit subordination to a jury or communicating with a witness to influence their testimony, but instead you commit the separate offense of witness harassment, which is causing mental mental anguish and distress. So that this is not strictly limited and was not limited by the prosecutor to a specific intent, nor was there any misstatement of the law in arguing the common design, which does not require the specific intent to commit the final crime. In the robbery murder situation, you don't have to intend to commit the robbery. It just has to occur in furtherance of the planned robbery. Here we have the infliction of emotional distress uh committed or occurring in the course of an attempt to influence a witness to testify falsely. That is common design and that is sufficient to support the defendant's conviction. Mr. Manchin, could you comment on uh counsel's uh argument relating to the jury instruction and the uh the bracketed portion of the IPI instruction? From my recollection of the record, the instructions that were given uh which did not include the uh bracketed information were agreed to by both parties. So the claim that being raised for the first time here an oral argument that the instructions were inadequate uh is your argument is that not so much inadequate, but they didn't conform to common design. So well, it was just the same intent argument as opposed to common design. Well, while common practice might be to include both forms of specific intent and common design in the accountability instructions, there is no requirement that says that if you don't do it, it is automatically reversible error. Well, my question then would be uh on the instructions as given the just general accountability instruction uh without anything further, can that instruction support a jury's finding of common design uh guilty verdict? I believe it can because the uh the uh common design language is just a further explication or further development or explanation of that original language of accountability of uh let's see if I can find the uh language that uh you're accountable for commission if before or during the offense with the intent to promote or facilitate it, you aid agree attempt to aid a person planning a commission. The common design is just a description of how you can aid agree and as as opposed to a separate uh totally separate instruction. And with regard to the jury court's answer, the again as Justice Steigman points out, this is a matter of judgment on the part of counsel. He could very well hope that a uh confused jury is more likely to convict. The fact that he rolled the dice so to speak and lost does not mean that that decision was ineffective or that no reasonable attorney would make that decision. We see this all the time where a uh instruction further instruction is requested by the jury and defense counsel asks for or agrees to a response, you have all the instructions. Then on appeal, the same claim is raised that he should have acted differently. Uh counsel's argument regarding ineffective assistance is simply that a different attorney might have or should have acted differently and requested a different instruction. Counsel's suggestion that the jury should court should just answer yes is incorrect. The if a further instruction was required, the instructions should be given would be the full instruction with all the bracket information and not just simply yes you have to have specific intent because for accountability you do not have to have specific intent. There are two forms of accountability. Mr uh Manchin, you heard my question to his body about the old saw about how confused juries are less likely to convict and it's a good thing for defense counsel might very well concluded based on the question from the jury there's confusion here and the last thing I want to do is to clear it up. Uh you've been in this business a long time so my question is this has there ever been a specific case that you can recall which has addressed precisely this uh circumstance and pointed out that it's important uh as opposed to just the kind of uh chit chat among courts and uh trial lawyers and the like. I cannot recall ever seeing a case where defense counsel was found ineffective for uh saying you have all the instructions you need. Well more specific uh have you seen any appellate court recognition of the I have seen uh cases I can't cite them by name or off the top of my head where the uh courts have said yes counsel could well be uh decide let's not clear up the confusion just uh just because he hopes that the confusion works in his uh behalf but yes there are cases out there that say that where they say it's it's first they say that it's improper to say act in this way and then say your attorney was incompetent because he acted that way because you're inviting error and inviting uh reversal based upon your own conduct um and would encourage attorneys to uh say no I don't want a response knowing that he's going to get reversed because he should have asked for a response. I think that this is a case where the jury could find the defendant guilty on accountability under either theory either because she knew of the intent to try to influence the witness that instead caused mental anguish or because they knew of the intent to cause mental anguish. You're presumed to know the natural consequences of your actions. The jury was not required to believe even if it's not uh contradicted the jury was not required to believe the defendant's testimony that she did not read the letter and counsel points to two sentences in the letter that proves that she could have read part of the letter without knowing these contents. She ignores that the very next sentence is I just need to tell you that you do not did not do these things. You are a man and can take this better. I need I tried not to involve you in this knowing that you are innocent and then she goes on to tell him you need to uh uh say you did these things. That's the very next sentence after the uh sentences picked up selected uh cherry picked out of this uh letter by counsel. So to say that she could have read the letter without realizing it intended to to make uh intended to influence Rowntree to lie uh ignores the contents of the letter. In fact in the very I think the very first five sentences of the letter you can tell that she's asking him to uh lie. So just picking up the one two sentences that don't refer to the lie doesn't remove the intent to influence the lie from the letter or does not uh eliminate defendant's knowledge. Defendant's knowledge that she was uh was also show us that of the intent to harass or to influence the witness is shown by her continued contact with Clay in jail and her uh veiled uh coded language talking about the delivery of the letter. So to say that she is a when asked to pass this letter to the defendant knowing it had been uh you had to know that was smuggled out of the jail for it to get to her so to deliver a letter smuggled out of jail being instructed to deliver to him with knowledge of its contents you uh she has the intent to influence him or she knows the intent to influence a lie and she would be guilty of harassing a witness when the uh crime of jury conviction here is proper and there was no error in the uh prosecuted argument because the state can and properly did argue both uh both strings of uh accountability to the jury. All right if there are no further questions I will stand on my brief with respect to the other issues raised. All right I see none thank you counsel. Ms. Boddy you have a chance for rebuttal. Hi um just a few points the separate offense counsel mentioned uh communicating with the witness it's the same as harassment of witness the the hypothetical offenses counsel wrote in his brief all involve influencing a witness to testify a certain ways the exact same offense as a witness and if the common design theory was argued why did why did the state during the motion for new trial specifically argue and only argue that the evidence proved Victoria's specific intent to harass and annoy Richard and why during trial one was cross-examining Victoria when it asked a series of questions related to her state of mind and counsel objected and the state said well these questions are relevant because quote her specific intent is at issue in this case why then the defense the entire defense closing argument was the state can't prove her specific intent this was a specific intent case it always was a specific intent intent case it is not a common design case no one argued below no one even said the words common design or any words related to common design theory ever this was always a shared intent case and it's completely inappropriate for the state to now argue on appeal for the first time that this was a common design case it wasn't argued that way below and the state can't argue now and it's telling um as to prosper and misconduct the entire state's argument is that the comments were proper under the common design theory it's telling that the state didn't make a single attempt to justify the remarks under the shared intent theory because it can't the comments are so improper under the shared intent theory and those are the comments that confuse the jury that confusion that prompted the question um about whether or not knowledge is required because the state was saying it's not the state was saying your your conduct of delivering a letter in and of itself proved your um your guilt in this case and that's simply not true and counsel there was no sound strategic reason for a defense attorney to not suggest a different answer counsel was ineffective for not objecting to the process of closing remarks this isn't the only instance he was ineffective he was ineffective for agreeing with the prosecutor's suggested response so that's an important point this was not it's not like he authored the response or came up with a response it was the state that came up the response the judge gave it the trial court agreed so why does it matter that he simply agreed as opposed to coming up with the response suggested response because this wasn't an active um a decision on his part where he came up with the idea and said this is this is how we should handle it i'm showing you how i want it handled it was more of a passive okay that's fine kind of like a failure to object like the failure to object to the process closing remarks he should have come up with the idea himself and spoke first you would not be making this argument i probably still would be arguing he was ineffective um but i think the argument then would be um weaker um if he came up with himself he didn't come up with himself he agreed to it and there was no reason for a defense attorney to agree to telling the jury to go back to the instruction that didn't answer the most important point in this case does the record show who whom the trial court asked to first respond i don't recall i just know that the state was the one that came up with the response and the judge agreed and then the trial attorney agreed um but no no there's no sound strategic reason for a defense attorney to not want to clarify the law on this critical point when the crux of the case was victoria's knowledge and she could not have intentionally facilitated the crime without knowing of the letter's criminal intent and um the evidence shows that she did not she did not know the letter's criminal intent she her actions are completely inconsistent with the criminal intent she did not pressure richard or say anything um to influence his testimony in any way the state failed to prove her mens rea um though she facilitated the crime by delivering the letter but she didn't do it with the requisite criminal intent and the state's repeated reliance on the condescending theory now um is just a way to run away from its failure to prove that mens rea it's inappropriate for the state to rely on it now under the shared intent theory she um was not proved guilty beyond a reasonable doubt and had the jury properly understood the law the rational irrational jury would have voted to acquit her i have nothing further all right thank you counsel court will take this matter under advisement the court stands in recess